THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN BRYCE,

       Plaintiff,                               Civil Action No.
                                                      12-CV-14618

vs.

                                                      HON. MARK A. GOLDSMITH

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**OPINION AND ORDER (1) ACCEPTING THE RECOMMENDATION CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED FEBRUARY 10, 2014 (DKT. 23), (2) OVERRULING PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION (DKT. 24), (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 16), and (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 22)**

### I.    INTRODUCTION AND BACKGROUND

This is a social security case. Plaintiff Justin Bryce appeals from the final determination of the Commissioner of Social Security denying his application for disability benefits under the Social Security Act, 42 U.S.C. § 1381(a), et seq. The Court entered an order referring the case to Magistrate Judge R. Steven Whalen (Dkt. 3). The parties have filed cross motions for summary judgment (Dkts. 16, 22). Magistrate Judge Whalen issued a Report and Recommendation (R&R), recommending that the decision of Administrative Law Judge (ALJ) Jessica Inouye be affirmed, that the Commissioner's motion be granted, and that Plaintiff's motion be denied (Dkt. 23). Plaintiff has filed objections to the R&R (Dkt. 24).

The factual and procedural background of this case, along with the standard of review and legal principles governing social security appeals, have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated in full here. Plaintiff, who was born on

1

March 30, 1989, has previously worked as a care provider for his mother, cook, auto detailer, and sorter. Administrative Record ("A.R.") at 234 (Dkt. 8). Plaintiff asserts that the conditions limiting his ability to work include post-traumatic stress disorder, bipolar disorder, anxiety, attention deficit disorder, and substance abuse. Id. at 233. On May 1, 2012, the ALJ issued her decision that Plaintiff was not disabled from January 1, 2009, through the date of the decision. Id. at 16. Plaintiff requested a review of this decision, id. at 10, and the Appeals Council denied this request. Id. at 1. At that point, the ALJ's decision became the final decision of the Commissioner. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 543-544 (6th Cir. 2004).

The ALJ based her decision on an application of the Commissioner's five-step sequential disability analysis to Plaintiff's claim.[1] The ALJ's findings were as follows:

- Under Step One, Plaintiff met the insured status requirements through June 30, 2010, and Plaintiff had not engaged in any substantial gainful activity since January 1, 2009. A.R. at 18.

- Under Step Two, Plaintiff had the following severe impairments: post-traumatic stress disorder, anxiety, depression, personality disorder, impulse control disorder, and polysubstance abuse. Id. at 19.

- Under Step Three, Plaintiff did not have any impairment or combination of impairments that met or equaled one of the listed impairments. Id. at 19.

- Plaintiff had the residual functional capacity (RFC)

    to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant should avoid all hazards. He is limited to unskilled, simple, routine, and repetitive work. He is limited to performing one- to two-step tasks. He would work best in small, familiar groups of coworkers. He should not be required to work in large groups or near large crowds. He can have only occasional contact with the public, and his contact with the public should be with small numbers, meaning one or two members of the public at a time. His work should be low stress, meaning no fast-paced assembly line work, only occasional changes in the work, and occasional decision making as part of the work.

---

[1] The R&R adequately lays out the law and regulations governing the five-step analysis. R&R at 17 (citing 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.920(a)).

2

Id. at 21.

- Under Step Four, Plaintiff was unable to perform any past relevant work. Id. at 24.

- Under Step Five, there were jobs that existed in significant numbers in the national economy that the claimant could perform. Id. at 25.

Therefore, at Step Five, the ALJ determined that Plaintiff was not disabled. Id. at 25.

Plaintiff filed a complaint in this Court to contest the ALJ's decision (Dkt. 1). Magistrate Judge Whalen issued his R&R recommending that the ALJ's decision be affirmed (Dkt. 23).

For the reasons that follow, the Court will accept the recommendation contained in the R&R, overrule Plaintiff's objections to the R&R, deny Plaintiff's motion for summary judgment, and grant Defendant's motion for summary judgment.

## II.   STANDARD OF REVIEW

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Under 42 U.S.C. § 405(g), this Court's review is limited to determining whether the Commissioner's decision "is supported by substantial evidence and was made pursuant to proper legal standards." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (citation and quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

## III.   ANALYSIS

Plaintiff raises objections to the following alleged errors in the R&R: (i) the finding that Plaintiff's psychiatric hospitalizations did not support the severity of his symptoms, and the failure to find that the hospitalizations indicated periods of exacerbation and remission, Obj. at 1-4 (Dkt. 24); (ii) the finding that Plaintiff's unsuccessful attempt to work was evidence of non-

disability, id. at 4-5; and (iii) the failure to consider Plaintiff's Global Assessment of Functioning ("GAF") scores as medical opinions, id. at 5-8. The Court will address each objection in turn and, for the reasons that follow, will overrule each objection.

### A. Objection One

Plaintiff argues that the medical evidence in the record, including Plaintiff's psychiatric hospitalizations and his psychiatric treatment in-between hospitalizations, supports the intensity and severity of his symptoms. Obj. at 2. He asserts that the evidence shows frequent hospitalizations and periods of decompensation, and that his conditions included periods of exacerbation and remission. Id. at 2-4. Plaintiff argues that the R&R failed to address the fact that "week-long psychiatric hospitalizations occurring every six months would prevent gainful employment." Id. at 4. He further argues that the RFC adopted by the ALJ is not supported by substantial evidence in the record. Id. He contends that the ALJ's decision failed to assess his ability to work on a regular and continuing basis, and failed to properly assess his frequent hospitalizations. Id.

The ALJ found that, although Plaintiff was hospitalized at least four times, the hospitalizations were not for extended durations, and Plaintiff's mental condition improved throughout the course of each hospitalization; the ALJ, therefore, concluded that Plaintiff's treatment was effective when he was compliant with it. A.R. at 22. The ALJ also noted that the record indicated Plaintiff was not entirely compliant with his treatment and was not consistent in keeping therapy appointments. Id. The ALJ further found that Plaintiff's credibility was undermined by inconsistent statements regarding his use of opiates, and that Plaintiff's work history and daily activities, along with the opinion of the state agency psychological consultant, supported the ALJ's RFC. Id. at 23. The R&R concluded that the ALJ did not err in noting that

4

each hospitalization lasted for less than a week, and in finding that Plaintiff's condition improved over the course of each hospitalization. R&R at 20. The R&R further concluded that the ALJ's findings were supported by the record evidence. Id. at 20-22.

As an initial matter, the Court notes that, although Plaintiff asserts that his frequent hospitalizations support a finding that his conditions were characterized by periods of exacerbation and remission, rendering him incapable of maintaining substantial gainful employment, this is a new argument raised for the first time in his objections to the R&R. "It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a District Judge that was not fairly presented to the Magistrate Judge." Marr v. Foy, No. 1:07–CV–908, 2010 WL 3061297, at *4 (W.D. Mich. Aug. 3, 2010) (citing Murr v. United States, 200 F.3d 895, 902 n. 1 (6th Cir. 2000)). "'The Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'" Id. (quoting Jones–Bey v. Caruso, No. 1:07–cv–392, 2009 WL 3644801, *1 (W.D. Mich. Oct. 30, 2009)). For this reason, the Court can properly deem this argument waived.

Furthermore, the Court concludes that Plaintiff's first objection should be rejected on its merits for three reasons. First, the record evidence indicates, as the ALJ found, that Plaintiff improved with hospitalization, medication, and therapy; furthermore, Plaintiff's impairments, which can be controlled with proper treatment, are distinguishable from progressively debilitating conditions marked by periods of exacerbation and remission. Second, substantial evidence supports the ALJ's decision to discount Plaintiff's credibility regarding the severity of his self-reported symptoms. Third, the ALJ's RFC determination is supported by substantial evidence in the record.

5

The medical evidence of record indicates that each time Plaintiff was hospitalized for psychiatric symptoms, he improved within a period of approximately one week or less.  Plaintiff was admitted to DOT Caring Center, Inc. on February 27, 2010, with complaints of depression, anxiety, vomiting spells, rapid heartbeat, and reports of drug use.  A.R. at 376, 378.  A mental health assessment completed on March 1, 2010 noted that Plaintiff was well-groomed, with normal speech, intact thought processes, appropriate affect, no suicidal ideation, and normal thought content, although his mood was characterized as anxious and he had a history of cutting.  Id. at 381-382.

Plaintiff was admitted to inpatient care at HealthSource Saginaw on October 1, 2010, and discharged on October 8, 2010.  Id. at 388-393.  Plaintiff was hospitalized for anxiety, insomnia, and suicidal ideation.  Id. at 388.  After admission, Plaintiff was placed on medications, including Vistaril, Lexapro, Klonopin, and Inderal.  Id. at 388.  Plaintiff reported gradually responding to the medications.  Id. at 389.  The discharge summary notes that Plaintiff was improved on October 8:

> When seen on October 8, 2010, the patient is alert, friendly, talkative, and free of any acute psychotic symptoms or anxiety problems.  His [sic] sleeping is better.  He gained good insight and willing to have regular outpatient counseling at Bay-Arenac Mental Health Center.  The treatment team felt that the patient has shown good process [sic] with the medications and he can be treated on an outpatient basis.

Id. at 399.

On May 8, 2011, Plaintiff was admitted to the emergency room at Bay Regional Medical Center with reports of stress and a possible seizure.  Id. at 415.  The reporting physician noted "there was so much psychological stuff going on that I doubt he had an actual seizure."  Id. at 415.  Plaintiff refused a mental health consultation and was discharged in stable condition.  Id. at 416.

On June 10, 2011, Plaintiff was involuntarily admitted at Bay Regional Medical Center with symptoms of depression, anxiety, and suicidal ideation. Id. at 616-618, 399, 401. The doctor noted that Plaintiff had limited judgment and insight, and was at risk for hurting himself. Id. at 401. Plaintiff's prescription for Seroquol was increased, his prescription for Ativan was discontinued, Klonopin was decreased, and Dilantin was continued. Id. at 401. At discharge on June 15, 2011, Plaintiff's affect was "much brighter and pleasant;" he "emphatically" denied any suicidal or homicidal ideation, and his judgment and insight had "improved significantly." Id. at 402.

On March 15, 2012, Plaintiff was admitted at McLaren Bay Region. Id. at 676. The intake notes indicate that Plaintiff reported anxiety, depression, multiple suicide attempts, mood fluctuations, poor sleep, and suicidal thoughts. Id. at 678. Plaintiff was switched to Zyprexa and continued in therapy. On March 17, Plaintiff reported sleeping well, significant mood improvement, and feeling better overall. Id. at 695. At discharge on March 19, Plaintiff reported a "much improved" mood and stated he was doing much better. Id. at 698. He denied suicidal thoughts and hallucinations, and noted a much reduced anxiety level. Id. at 698. He had improved judgment and insight. Id. at 698.

Further, the medical records indicate that Plaintiff's periods of worsening symptoms are tied to his failure to follow his treatment plan, and that Plaintiff's symptoms improve when he takes prescribed medication and attends therapy sessions. On October 13, 2010, Plaintiff was assessed as having mild or no self-injurious behaviors, no suicidal ideation, and no reported thought disturbances, although he had moderately severe harmful behaviors. Id. at 430-431. On October 20, 2010, Plaintiff reported that he ran out of Klonopin because he was taking two at a time, and stopped taking Abilify because it was making him anxious and restless. Id. at 442-443.

He reported not sleeping well and feeling very anxious and restless, and he reported having opiates in his system earlier. Id. at 442. On November 17, 2010, a medical report noted that Plaintiff was prescribed Inderal, Klonopin, Remeron, and Seroquel, and that Plaintiff reported he was sleeping much better since starting Seroquel, although he continued to feel anxious. Id. at 440. A report dated December 15, 2010 states that Plaintiff did not appear for his appointment. Id. at 444. On January 5, 2011, Plaintiff reported he stopped taking Seroquel after experiencing twitching, although he stated the Seroquel helped his mood and thoughts. Id. at 446.

An outpatient report dated May 2, 2011 states that Plaintiff had not shown up for therapy appointments and had not recently seen the doctor. Id. at 434. The medical report stated Plaintiff was not doing well, could not sleep, took three Klonopin at once, and was listed as decompensating and unstable. Id. at 452-453. On August 15, 2011, Plaintiff reported he was sleeping much better after resuming Seroquel, although he was still anxious. Id. at 462. On October 23, 2011, Plaintiff went to the emergency room seeking medication for anxiety and claiming his medication was not working; he was given a prescription for Xanax. Id. at 642. On December 2, 2011, a medical report notes that Plaintiff was not consistent with keeping his therapy appointments for the past year. Id. at 501. Plaintiff reported feeling basically healthy and better when he was off opiates. Id. at 502, 511. Plaintiff reported feeling calmer after taking Pristiq and continuing with Seroquel; he was listed as improving. Id. at 516-517.

On January 16, 2012, a doctor advised Plaintiff that to see improvement, "he will have to be more invested in his psychotherapy than his therapist's note seems to indicate at present." Id. at 521. A progress note from February 22, 2012 indicates Plaintiff was continuing to miss psychotherapy appointments, but that he was "planning to attend therapy sessions because his disability attorney told him that he had to." Id. at 526.

This record evidence indicates that Plaintiff's psychological and psychiatric conditions can be controlled with treatment, which undercuts the claimed severity of his conditions. It is notable during that the brief, acute periods of illness documented by the hospitalizations in the record, Plaintiff responded quickly and well to therapy and medication.

At least one court noted has noted that a claimant's brief hospitalization does not indicate the severity of a claimant's overall condition, where the acute period of illness is quickly brought under control:

> Although no one questions the severity of Plaintiff's illness during the three days that she was hospitalized in March of 2008, drug use and a lack of medication were two factors that may have contributed to that relatively brief and isolated severe period of illness. Once Plaintiff resumed her medications, her acute illness was brought under significant control and she was released from the hospital.

Headen v. Astrue, No. 10-648, 2011 WL 3566796, at *8 (S.D. Ohio July 22, 2011). Like in Headen, Plaintiff's brief, acute periods of illness here were linked to drug use and the failure to follow treatment; the bouts of illness were also brought under "significant control" upon receiving treatment.

Furthermore, this Court addressed a similar situation in a prior decision in a different case. In Burney v. Commissioner of Social Security, the medical evidence indicated that the claimant's mental impairments improved when she consistently took her medication. This Court concluded that "impairments that are controlled by medication are not disabling." No. 12-10151, 2013 WL 1289310, at *3 (E.D. Mich. Mar. 28, 2013) (citing Pasco v. Comm'r of Soc. Sec., 137 F. App'x 828, 836 (6th Cir. 2005)). The fact that Plaintiff's symptoms here "often improved with medication and treatment" undercuts the claimed severity of his impairments. Torres v. Comm'r of Soc. Sec., 490 F. App'x 748, 754 (6th Cir. 2012).

In support of his argument that the periods of hospitalization indicate the episodic nature of his impairments, characterized by periods of exacerbation and remission, Plaintiff relies on Singletary v. Bowen, 798 F.2d 818 (5th Cir. 1986) and Wilcox v. Sullivan, 917 F.2d 272 (6th Cir. 1990). Both cases are distinguishable. In Singletary, the Fifth Circuit, quoting a case from the Northern District of California, concluded as follows:

> Unlike a physical impairment, it is extremely difficult to predict the course of mental illness. Symptom-free intervals, though sometimes indicative of a remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse. Realistically, a person with a mental impairment may be unable to engage in competitive employment, as his ability to work may be sporadically interrupted by unforeseeable mental setbacks.

Singletary, 798 F.2d at 821 (quoting Lebus v. Harris, 526 F. Supp. 56, 61 (N.D. Cal. 1981)). The Fifth Circuit adopted this analysis to conclude that a claimant who has a mental impairment need not demonstrate a twelve-month period of impairment "unmarred by any symptom-free interval" to meet the duration requirement of the disability statute. Singletary, 798 F.2d at 821. In this case, however, the duration requirement is not at issue; the ALJ concluded that Plaintiff had the severe impairments of post-traumatic stress disorder, anxiety, depression, impulse control disorder, and polysubstance abuse that met the twelve-month duration requirement. A.R. at 19. The Singletary decision, although it supports the general proposition that mental health impairments may be marked by symptom-free periods, is inapplicable to the specific issue here: the extent to which short, acute periods of illness that respond well to treatment support a finding of non-disability.

In Wilcox, the Sixth Circuit addressed a disability arising from multiple sclerosis. The court concluded, "[I]n evaluating multiple sclerosis, or any other episodic disease, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities." Wilcox, 917 F.2d at 277. Plaintiff argues that

10

week-long psychiatric hospitalizations occurring every six months would preclude employment.[2] However, unlike multiple sclerosis, which by its nature is "an incurable, progressive disease subject to periods of remission and exacerbation," id. (citation omitted), substantial evidence in the record supports the conclusion that the episodic nature of Plaintiff's condition resulted from his periodic failure to adhere to a treatment plan, not from the underlying nature of his mental health impairments. Further, as the R&R concluded and as Plaintiff does not contest in his objections, "[t]he ALJ's thorough questioning of Plaintiff and review of the record does not suggest . . . compelling reasons for misusing prescription drugs, abusing opiates or illicit drugs, or failing to attend therapy sessions."[3]

Furthermore, evidence in the record shows that Plaintiff's condition improved from 2010 and early 2011 to late 2011 and early 2012. See A.R. at 434, 442 (medical reports from late 2010 and early 2011 show Plaintiff was anxious, unstable, and had opiates in his system); Id. at 516-517 (medical reports from December 2011 indicate Plaintiff was feeling calmer, was off opiates and was improving); Id. at 698 (discharge report from March 19, 2012, after being admitted to the hospital for a period of acute symptoms, indicate significant improvement after four days). Therefore, the ALJ's conclusion that the periodic hospitalizations did not indicate a

---

[2] The Court notes that, as the R&R points out, it is not immediately apparent that missing work for one week twice a year due to acute periods of illness would render an individual unable to work. See R&R at 25-26. Furthermore, the record indicates that Plaintiff's hospitalizations occurred in October 2010, June 2011, and March 2012; these hospitalizations therefore did not occur every six months. Both of these points undermine Plaintiff's argument about the episodic nature of his impairment.

[3] As the R&R notes, the "[f]ailure to follow prescribed treatment becomes a determinative issue only if the claimant's impairment is found to be disabling under steps one through five and is amenable to treatment expected to restore ability to work." R&R at 23 (quoting Hester v. Sec. of Health & Human Servs., 886 F.2d 1315 (Table), 1989 WL 115632, at *3 (6th Cir. Oct. 4, 1989)). Because the ALJ found Plaintiff not disabled at Step Five of the analysis, Plaintiff's failure to follow treatment is not determinative of the disability finding. Regardless, evidence of Plaintiff's noncompliance with treatment sheds light on the episodic nature of his impairments, as discussed above.

disabled status was supported by substantial evidence. See, e.g., White v. Comm'r of Soc. Sec., 572 F.3d 272, 284-285 (6th Cir. 2009) (noting that although the claimant argued the ALJ "failed to properly consider the episodic nature of bipolar disorder and depression," substantial evidence supported the ALJ's conclusion that the overall trajectory of the claimant's impairments indicated improvement).

The Court further concludes that the ALJ's credibility determination should be upheld. In his objection, Plaintiff does not challenge the R&R's conclusion that the ALJ applied the correct legal standard in making her credibility determination. See R&R at 19-24. The ALJ's decision not to fully credit Plaintiff's self-reported symptoms is supported by substantial evidence in the record. First, Plaintiff's failure to regularly attend therapy or to take his medications as prescribed undercuts the severity of his self-reported symptoms of anxiety, depression, insomnia, and suicidal ideation. See, e.g., Sias v. Sec'y of Health & Human Servs., 861 F.2d 475, 480 (6th Cir. 1988) (concluding that the claimant's failure to wear support hose and continued smoking habit, in contravention of his physician's prescriptions, were "not consistent with [the habits] of a person who suffers from intractable pain . . . ."). In addition, the ALJ noted inconsistencies in Plaintiff's reported use of opiates. A.R. at 23. The Court notes, as well, that Plaintiff testified that he does not consider himself disabled, which (although it is not dispositive) further undermines the self-reported severity of his symptoms. Id. at 44. For these reasons, the ALJ permissibly concluded that Plaintiff's self-reporting regarding the intensity and severity of his symptoms was not wholly credible. Id. at 22.

Finally, the Court concludes that the ALJ's RFC determination was supported by substantial evidence. As discussed above, Plaintiff's impairments, although acute at times, responded rapidly to treatment and showed an overall trajectory of improvement. Furthermore,

as noted in the above discussion on Plaintiff's credibility, the ALJ concluded that Plaintiff's claim regarding the intensity and severity of his self-reported symptoms was not fully credible. In addition, the ALJ cited Plaintiff's daily activities, which included riding motorcycles, performing household chores, attending church, playing guitar, and writing music, as inconsistent with a finding of disability. See A.R. at 23. The ALJ further relied on the opinion of Judy Strait, the state agency psychological consultant, who opined that Plaintiff "may work best alone or in a small, familiar group. . . . The claimant retains the capacity to perform routine, 2-step tasks on a sustained basis." Id. at 106. In addition, the ALJ referenced Plaintiff's full-time work as a cook in 2010.[4] Id. at 23. This constitutes substantial evidence in support of the ALJ's determination that Plaintiff could perform simple, repetitive work limited to one- to two-step tasks, in a small, familiar group, with only occasional decision-making. See Torres, 490 F. App'x at 754 (concluding that the ALJ's RFC determination that the claimant could perform simple, unskilled work was supported by substantial evidence, where the claimant "periodically suffered pain and fatigue but her symptoms often improved with medication and treatment," and where the RFC was consistent with physician opinions).

For these reasons, the Court overrules Plaintiff's first objection.

### B. Objection Two

In his second objection, Plaintiff argues that the R&R and ALJ impermissibly concluded that his limited work activity supported the finding of non-disability. Obj. at 4-5. Plaintiff maintains that his attempt to work, which he now claims was terminated due to his impairments, shows the desire to work, but not the ability to work on a sustained basis. Id. Plaintiff relies on Cohen v. Sec'y of Health and Human Servs., 964 F.2d 524 (6th Cir. 1992) and Wilcox, 917 F.2d

---

[4] The Court discusses the evidence regarding this prior work more fully in the analysis of Plaintiff's second objection.

at 277. In Cohen, 964 F.2d at 526-530, the court concluded that despite the claimant's limited ability to engage in ballroom dancing and attend law school part-time, her chronic fatigue syndrome prevented her from substantial gainful employment on a "regular and continuing basis." In Wilcox, 917 F.2d at 277, the claimant, who suffered from multiple sclerosis, attempted to work but missed many days due to "his debilitating condition." He was laid off when his "union recommended that he stop working." The court held that the claimant "should not be penalized because he had the courage and determination to continue working despite his disabling condition." Id.

The ALJ concluded that Plaintiff's six-month period of full-time work as a cook in 2010 was not substantial gainful employment because the earnings from this position could not be substantiated. A.R. at 18. The ALJ determined that although this work experience was not substantial gainful activity, it weighed against a finding of disability. Id. at 23. The R&R concluded the ALJ did not err in making this determination. R&R at 21-22.

The Court rejects Plaintiff's arguments. It is true that the cases on which Plaintiff relies establish that an attempt to work that is terminated due to a claimant's impairments does not support a finding of "not disabled." See also 20 C.F.R. 404.1574(a)(1) ("We generally consider work that you are forced to stop or to reduce below the substantial gainful activity level after a short time because of your impairment to be an unsuccessful work attempt."). However, while Plaintiff testified that although his employers at the bar claimed they terminated him because "he couldn't complete the tasks that they wanted [him] to," he later opined that the true reason he was fired was because the owners wanted to give Plaintiff's position to a relative of the owners. A.R. at 42-43. Therefore, there is at least an ambiguity as to whether Plaintiff was terminated due to his impairments or due to external factors. Because an ambiguity remains as to this point,

14

Plaintiff did not meet his burden of showing that his termination from his past work experience supports a finding of disability. See, e.g., Wilson v. Comm'r of Soc. Sec., 280 F. App'x 456, 460 (6th Cir. 2008) (concluding that because the claimant bore the burden of showing the amount of time she worked at a past job, the ambiguity in the record regarding that point was insufficient to find in favor of the claimant on that issue).

For these reasons, the Court overrules Plaintiff's second objection.

### C. Objection Three

In his third objection, Plaintiff argues that the ALJ erred in failing to address the Global Assessment of Functioning ("GAF") scores in the medical record as medical opinions. Obj. at 5. Plaintiff argues that the Social Security Administration's Administrative Message dated July 22, 2013 dictates that GAF scores are considered opinion evidence. Id. at 6. Plaintiff asserts that his GAF scores are consistently low, and are supported by clinical treatment and psychiatric hospitalization records. Id. at 6-8. Plaintiff thus maintains that this opinion evidence mandates a finding of disability. Id. at 7.[5]

The ALJ stated the following regarding the GAF scores:

> The undersigned gives little weight to the global assessment of functioning (GAF) scores that are documented in the record because they are merely "snapshots in time" and not indicative of any longitudinal functional abilities or limitations. Further, the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements [of the] mental disorders listings."

A.R. at 24. The R&R concludes that the GAF scores carry little weight because they indicate Plaintiff was limited for a few days, at most. R&R at 25-26.

---

[5] Plaintiff also argues that the recommendations he received to attend occupational therapy do not undercut the import of the low GAF ratings. Pl. Obj. at 7-8. Because the Court concludes that the GAF ratings do not require a finding of disability, the Court need not reach the issue of the occupational therapy recommendations.

In a prior decision in a different case, this Court explained that an ALJ's failure to credit, or even to reference, a GAF score does not render the RFC or the decision in general unreliable:

> The Magistrate Judge correctly concluded that courts in this district do not accord controlling weight to GAF scores. . . . In fact, the Sixth Circuit has held that an ALJ's failure to refer to a GAF score does not make his or her RFC analysis unreliable. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

Burney, 2013 WL 1289310, at *3; see also White v. Comm'r of Soc. Sec., 572 F.3d 272, 276 (6th Cir. 2009) (noting that a GAF score is a subjective determination); Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 511 (6th Cir. 2006) (concluding that low GAF scores failed to show that the ALJ's decision was not supported by substantial evidence, because, in part, the court was not "aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place").

Plaintiff relies principally on Administrative Message 13066 ("AM-13066"), dated July 22, 2013, which states in part, "We consider a GAF rating as opinion evidence." As an initial matter, this administrative message was released after the ALJ completed her decision. What is more, as one court explained, a GAF score, by itself, carries little weight even under AM-13066:

> Nor does the Court find error in the ALJ's failure to discuss Dr. Deutsch's assessment of a GAF score of 40. Plaintiff cites a reference to GAF scores in a superseded edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), Fourth Edition, DSM–IV, but the most recent version of the DSM does not include a GAF rating for assessment of mental disorders. DSM–V 16–17 (5th ed. 2013). Furthermore, in Administrative Message 13066 ("AM–13066"), issued January 2014, the SSA noted:
>
>> [A] GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind his or

16

> her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

Nienaber v. Colvin, No. 13-1216, 2014 WL 910203, at *4 (W.D. Wash. Mar. 7, 2014) (emphasis added).[6]

The Court has reviewed the GAF ratings provided in the medical record. A.R. at 399, 431-432, 440-441, 489-494, 501-510, 520-522, 681, 698. In each of these medical records, the GAF rating is simply provided as a number, without explanation as to the period to which the rating applies. The Court concludes that the ALJ, in stating that she gave little weight to the GAF scores because they were "not indicative of any longitudinal functional abilities or limitations," gave good reasons for not assigning greater weight to the GAF scores. See AM-13066 (noting that a GAF score, in general, "does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis").

Furthermore, the Court notes that under the substantial evidence standard, "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Even if — as Plaintiff contends— the GAF scores provide evidence of disability, the ALJ's RFC determination was nevertheless supported by substantial evidence, for the reasons discussed previously.

For these reasons, the Court overrules Plaintiff's third objection.

## IV. CONCLUSION

For the reasons stated above, the Court accepts the recommendation contained in the R&R, overrules Plaintiff's objections to the R&R, denies Plaintiff's motion for summary

---

[6] The Court notes that although the decision in Nienaber states that AM-13066 was issued in January 2014, Plaintiff appears to be correct that it was in fact issued in July 2013.

judgment, and grants Defendant's motion for summary judgment.

    SO ORDERED.

Dated: March 28, 2014            s/Mark A. Goldsmith
    Flint, Michigan            MARK A. GOLDSMITH
                                   United States District Judge

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 28, 2014.

                                   s/Deborah J. Goltz
                                   DEBORAH J. GOLTZ
                                   Case Manager